## WILSON vs. MITCHELL.

1810.

Wilson
vs
Mitchell

JUNE.

APPEAL from *Baltimore* County Court. This was an action of *slander*, brought by *Alexander Mitchell*, the appellee. The declaration contained four counts. After stating that the appellee had been, and continued to be, a merchant, and commission merchant, and a faithful buyer and seller of merchandize, &c. the *first* count of the declaration charged *David Wilson*, the appellant, with speaking the following false and scandalous words of the appellee, "that he sold goods and merchandizes on commission for a higher sum than he returned an account of sales for; and that he cheated his employer, by putting part of the money for which the goods sold, in his (the appellee's) pocket." The *second* count, after stating that

*Where, in the return of a commission issued to a foreign country to take testimony, the commissioners oath appears to have been taken, and is certified by the commissioners to have been duly taken, it is sufficient, without other proof, that the persons administering the oath had authority for that purpose.*

*In slander, one of the counts in the declaration charged the defendant with having made a voluntary affidavit, and caused certain false and malicious lies to be written thereto.*

in, and among others, that "there was a certain quantity of *American* soap, which to his certain knowledge was sold at *Curacoa* by the said A M," (the plaintiff,) "at six dollars current money," and the affidavit, as offered in evidence by the plaintiff, stated the same word, except that the words *"per box"* were added after the words "six dollars."—*Held* to be a fatal variance.

The plaintiff cannot under the act of 1809, *ch* 153, take a judgment on a count in his declaration upon which he had given no evidence although there is a general verdict in his favour

1810.

Wilson
vs
Williams

the appellee had in his business aforesaid sold at *Curacoa*
a certain number of boxes of soap, it being part of the
outward bound cargo of the sloop *Delight,* for and on ac-
count of a certain *Marcus M'Causland,* and the said
*Alexander,* for the sum of five dollars and an half for each
box, and had returned a true and faithful account of the
sale to the said *M'Causland,* yet the appellant *David,* well
knowing, &c. falsely spoke these words; "He (meaning
the said *Alexander,*) sold the soap, (meaning the aforesaid
boxes of soap,) at six dollars per box, but has returned an
account of sales to *Marcus M'Causland,* (meaning the said
*Marcus M'Causland,*) only for five dollars and an half."
The *third* count charged that the said *David,* on the 10th
of April 1801, voluntarily made a certain written paper,
purporting to be an *affidavit,* and purporting to be sworn
to before a certain *G G P,* and caused certain false state-
ments of and concerning the said *Alexander,* in his busi-
ness aforesaid, to be written, &c. in the following English
words, viz. "And this deponent, (meaning thereby the said
*David,*) further deposes and declares, that in the outward
bound cargo of the sloop *Delight,* there was a certain quan-
tity of *American* soap, which to his, (meaning the said *Da-
vid's,*) certain knowledge, was sold at *Curacoa* by the
said *Alexander Mitchell,* (meaning the aforesaid *Alexander,*)
at six dollars current money of the *U. S.* of *America;* any
thing in the account of sales, (meaning the aforesaid ac-
count of sales returned to the said *Marcus M'Causland,*)
rendered by the said *Alexander Mitchell,* (meaning still the
said *Alexander,*) to the contrary notwithstanding." The
*fourth* count charged, that the said *David,* out of his fur-
ther malice and envy against the said *Alexander* before had
and conceived, speaking of the said *Alexander* in his busi-
ness aforesaid, &c. charged him with the infamous and
hurtful crime of fraud and deceit, and with selling the
goods, &c. intrusted to his care, for more money than he
returned in his account of sales, and with fraudulently and
dishonestly keeping out of the monies for which the goods,
&c. were sold, more than he was entitled to for his com-
mission, &c. The general issue was pleaded.

1. The Plaintiff at the trial offered to read in evidence
the testimony taken under a commission, issued at his in-
stance out of the county court, and directed to *Joseph Foulke*
and *Henry Basden,* of the *Island* of *Curacoa.* At the

foot of the form of the oath, written on the commission, to be taken by the commissioners, were written the names of the commissioners, with their seals, and also these words— "Sworn before us the 28th of May 1806.

<div style="text-align:right">Joseph Ingram<br>P. L. Brion."</div>

Then followed the interrogatories and answers of witnesses, and the whole authenticated by this certificate— "We, the undersigned commissioners, do hereby certify to the honourable the judges of Baltimore county court, that after we had severally taken the oath directed in said commission, and administered the oath to Clement Davis, whom we appointed aso ur clerk in said commission directed, that we proceeded to examine the witnesses produced; and we do certify, that the annexed answers were made to the annexed interrogatories. As witness our hands and seals this 28th day of May 1806,

<div style="text-align:right">Joseph Foulke, (L. S.)<br>Henry Basden, (L. S.)"</div>

The defendant's counsel objected to the admissibility of the testimony taken under this commission, on the ground that the commission did not appear to have been duly executed. But the court, [Nicholson, Ch. J. and Hollingsworth, A. J.] overruled the objection, and permitted the commission and depositions to be read in evidence to the jury. The defendant excepted.

2. The plaintiff, in support of the issue joined on the third count of his declaration, offered to read in evidence an affidavit, dated the 10th of April 1801, and proved to have been made before G. G. Presbury, one of the justices of the peace for Baltimore county, by the defendant, (Wilson,) and to have been signed by Wilson. The only part necessary to be stated is this, viz. "And this deponent deposes and declares, that in the outward bound cargo of the sloop Delight, there was a certain quantity of American soap, which to his certain knowledge was sold at Curacoa by the said Alexander Mitchell, at six dollars per box, current money of the U. S. of America, any thing in the account of sales rendered by the said Alexander Mitchell to the contrary notwithstanding." The defendant objected to the reading of this paper to the jury. But the court, [Nicholson, Ch. J. and Hollingsworth A. J.] overruled the

objection. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

*Harper*, for the Appellant. 1. The question under the *first* bill of exceptions, arises on the ground that it does not appear that the commissioners, named in the commission, took the oath required, before some person legally authorised to administer it. The court will not presume that the persons, before whom the oath appears to have been taken, had proper authority. This is not similar to *Bryden vs. Taylor*, 2 *Harr. & Johns*. 396, nor *De Sobry vs. Terrier*, *Ibid* 191. In the former case, the court presumed that the person, who acted as a justice, was such, because they were bound to know who were the justices of the peace, records thereof being in the court; but this court are not bound to know, nor have they the means of knowing, the officers of a foreign country; they can only know legally, by having it certified to them under the seal of such country. The court are bound to notice a *public seal*, as in *De Sobry vs. Terrier*, such seals being evidence of themselves.

2. The *second* bill of exceptions rests upon a variance between the *third* count in the declaration, and the affidavit offered to support it. In that count it is stated that the soap was sold at six dollars for *the whole quantity;* and the affidavit stated it to have been sold at six dollars *per box*. This is a substantial variance. But even if it was not, it would still be fatal; for where a written instrument is professed to be set out, it must be done word for word.

*Winder*, for the Appellee. 1. The objection to the execution of the commission offered in evidence in the *first* bill of exceptions, has no force. If this commission is defectively executed, there never was one legally executed. Here the county court delegated an authority to certain persons, who certify that they have performed what the court directed. If this is not evidence, then the court are not to believe that the commissioners examined the witnesses; and they must have other proof that the depositions of the witnesses were properly taken. In the cases of *Bryden vs. Taylor*, and *De Sobry vs. Terrier*, the ob-

jections did not arise under commissions issued from the court.

2. There must be a clerical mistake in the third count, in the omission of the words *per box*. The objection in the court below was not on this ground, but because the affidavit was not set out at length. The great strictness in setting out the whole instrument has been greatly relaxed; and where the substantial words are proved, it is now held to be sufficient. This is the case of a *libel*. Here the reference is to the affidavit, and the defendant has notice of the words charged and relied on. It is so in a libel, where the publication is referred to, and it may be known.

3. There being a general verdict in this case, and there being other counts in the declaration, which are good, the action can be sustained, and the judgment may be entered on any one of the good counts, under the act of 1809, ch. 153.

CHASE, Ch. J. The court could never permit the plaintiff to take a judgment on a count upon which he had given no evidence.

The court concur with the court below, in the opinion expressed in the *first* bill of exceptions, but dissent from that in the *second* bill of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.